NANCY HERSH, ESQ., State Bar No. 49091
AMY ESKIN, ESQ., State Bar No. 127668
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544

Attorneys for Plaintiffs

ORIGINAL FILED
E-filing JUL - 1 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CV 08 3164 EMC

| | |
|---|---|
| WILLIAM ESTHEIMER and KRISTEN ESTHEIMER<br><br>Plaintiffs,<br><br>vs.<br><br>INTEGRA NEUROSCIENCES, INC., a corporation; INTEGRA LIFESCIENCES, INC., a corporation; SHELHIGH, INC., a corporation; SHLOMO GABBAY, M.D., an individual; and DOES ONE through TEN, inclusive,<br><br>Defendants. | CASE NUMBER<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Strict Liability-Failure to Warn<br>2. Manufacturing Defect<br>3. Negligence<br>4. Fraud by Concealment<br>5. Loss of Consortium |

**DEMAND FOR JURY TRIAL**

1.

Plaintiffs herewith request a trial by jury as to all issues of material fact.

///

///

- 1 -
COMPLAINT AND DEMAND FOR JURY TRIAL

**PRELIMINARY ALLEGATIONS**

2.

Defendants INTEGRA NEUROSCIENCES, INC., INTEGRA LIFESCIENCES, INC., SHELHIGH, INC., and Does ONE through FIVE, and each of them, produced, manufactured, distributed and sold a contaminated dural graft which was implanted in Plaintiff, WILLIAM ESTHEIMER, during a neurosurgical procedure on January 26, 2007, as part of an operative procedure which involved brain surgery. The dural patch was contaminated and defective, thereby causing Plaintiff WILLIAM ESTHEIMER to suffer injuries and damages as set forth hereinafter.

3.

The contaminated dural patch which is the subject of this lawsuit was manufactured, produced and provided to Defendants Integra identified in Paragraph 2 above by SHELHIGH, INC., SHLOMO GABBAY, M.D., and Does SIX through TEN, inclusive, and the Integra Defendants distributed and/or sold the patch to Plaintiff's hospital and/or physicians so that it was implanted into him.

**JURISDICTION AND VENUE**

4.

This Court has diversity subject–matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (a): "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between: (1) citizens of different States." Plaintiffs WILLIAM ESTHEIMER and KRISTEN ESTHEIMER are and were at all relevant times residents of California. Defendants are residents of New Jersey. Damages to Plaintiffs are estimated in good faith to exceed the sum or value of $75,000, exclusive of interests and cost. The Court also has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court and Defendants systematically and continually conducts business here and throughout the U.S., including marketing, advertising, and sales directed to

residents of the jurisdiction where Plaintiffs reside.

## PARTIES

5.

Plaintiffs WILLIAM ESTHEIMER and KRISTEN ESTHEIMER are and were at all relevant times husband and wife and reside in Marin County, California

6.

As result of using Defendants' dural graft, Plaintiff WILLIAM ESTHEIMER suffered brain infection, requiring prolonged hospitalization, surgery and rehabilitation and was treated and hospitalized at UCSF Medical Center in San Francisco, California.

7.

Defendants INTEGRA NEUROSCIENCES, INC., INTEGRA LIFESCIENCES, INC., SHELHIGH, INC., and Does ONE through FIVE, and each of them, are U.S. corporations, doing business in California and were, at all relevant times, manufacturing, producing, marketing, distributing and/or selling medical devices including the dural graft implanted into Plaintiff WILLIAM ESTHEIMER.

8.

Plaintiffs do not know the true names of the Defendants sued herein as DOES ONE through TEN, inclusive. Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused the injuries and damages sustained by Plaintiffs as herein alleged.

9.

Defendants INTEGRA NEUROSCIENCES, INC., INTEGRA LIFESCIENCES, INC., SHELHIGH, INC., SHLOMO GABBAY, M.D., and DOES ONE through TEN, inclusive, and each of them, will herein be referred to as "Defendants".

10.

In engaging in the conduct alleged herein, each Defendant acted as the agent

- 3 -
COMPLAINT AND DEMAND FOR JURY TRIAL

for each of the other Defendants.

11.

At all times herein mentioned, each of the Defendants was the agent and employee of every other Defendant in doing the acts herein alleged, and was, at all times, acting within the purpose and scope of said agency and employment and all of said acts and conduct were ratified and approved by said Defendants.

## FACTUAL ALLEGATIONS

12.

On January 26, 2007, Plaintiff WILLIAM ESTHEIMER underwent neurosurgery to remove a meningioma from his brain. As part of the said surgery, Plaintiff's surgeon utilized and placed a dural patch manufactured by Defendants SHELHIGH, GABBAY, and DOES SIX through TEN, inclusive, and each of them, and distributed and sold by Defendants INTEGRA NEUROSCIENCES, INC., INTEGRA LIFESCIENCES, INC., and DOES ONE through FIVE, inclusive, and each of them, to UCSF Hospital where Plaintiff was a patient.

13.

Thereafter, Plaintiff developed a serious brain infection requiring surgery and prolonged hospitalization and rehabilitation.

14.

In April of 2007, the U.S. Food and Drug Administration (FDA) investigators and U.S. Marshalls seized all implantable medical devices, from Defendant Shelhigh, Inc., after finding significant deficiencies in the company's manufacturing process. This seizure included the dural patch implanted in plaintiff. The FDA found that the deficiencies in the company's manufacturing process compromised the safety and effectiveness of the products, particularly their sterility. This seizure means that the device was not in compliance with FDA approval requirements. Defendants and each of them violated the Code of Federal Regulations in the manufacture and distribution of its product.

15.

On or about July 7, 2007, Plaintiff was notified that he had received a contaminated dural patch which was the cause of his infection and its sequelae.

16.

The said patch was contaminated as a result of a manufacturing defect and was also defective due to Defendants', and each of their, failure to warn of its dangerous properties.

16a.

Defendants, and each of them, acted with malice, oppression and fraud.

## FIRST CAUSE OF ACTION

### [Strict Product Liability: Failure to Warn]

17.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-16, inclusive, of this Complaint.

18.

Defendants designed, manufactured, marketed, sold and/or supplied the dural patch to Plaintiff WILLIAM ESTHEIMER's doctors and hospital.

19.

The known risks and dangers of contamination of the dural patch include, but are not limited to, an increased risk of brain and wound infection and sequelae. These facts were known at all times to the Defendants, and each of them.

20.

At all relevant times herein, the potential risks and dangerous injury caused by contamination of the dural patch presented substantial danger to Plaintiff WILLIAM ESTHEIMER and the general public.

21.

At all times mentioned herein, ordinary consumers would not have

- 5 -
COMPLAINT AND DEMAND FOR JURY TRIAL

recognized the potential risks and dangers the dural patch posed to patients.

22.

At all times mentioned herein, Defendants, and each of them, failed to adequately warn of the potential risk and dangers posed to patients having the dural patch implanted. The dural patch was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with its use. The risks of the contamination were known or knowable at the time of its distribution to and implantation in Plaintiff and Defendants, and each of them, failed to provide proper warnings of such risks and danger.

23.

At all times mentioned herein, the patch distributed to and implanted in Plaintiff WILLIAM ESTHEIMER was used in a way reasonably foreseeable to all Defendants. The product was defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the user when used in its intended and foreseeable manner. The foreseeable risks of serious harm were so great that Plaintiff WILLIAM ESTHEIMER and the general public, having known of such foreseeable risks, would not have allowed the patch to be used.

24.

The dural patch was defective due not only to inadequate warnings and misrepresentation to the general public, but was also defective by inadequate warnings and misrepresentations to healthcare professionals. Defendants, and each of them, knew that had healthcare professionals been adequately warned of the serious risks of injury to their patients, healthcare professionals would not have used the dural patch in said patients. Neither Plaintiff nor Plaintiff's physicians were warned of the significant dangers from using the dural patch which were known or scientifically knowable by Defendants, and each of them.

///

- 6 -
COMPLAINT AND DEMAND FOR JURY TRIAL

25.

Defendants, and each of them, acted with conscious disregard of the foreseeable harm caused by the implantation of the dural patch.

26.

In doing the acts herein alleged, the Defendants, and each of them, acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an office, director and or managing agent of Defendants, and each of them.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### [Manufacturing Defect]

27.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-26, inclusive, of this Complaint.

28.

The dural patch which is the subject of this lawsuit and which was implanted into Plaintiff WILLIAM ESTHEIMER was contaminated as a result of the manufacturing of and/or distribution of the said patch by Defendants herein, and each of them, and caused injuries and damages to Plaintiffs as herein alleged.

## THIRD CAUSE OF ACTION

### [Negligence]

29.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-28, inclusive, of this Complaint.

30.

Defendants and their representatives were distributors, manufacturers,

marketers, designers and/or or sellers of the dural patch. At all times herein, Defendants, and each of them, had a duty to exercise reasonable care in the sale and/or distribution of the dural patch into the stream of commerce.

31.

Defendants, and each of them, failed to exercise ordinary care in the design, manufacture, marketing, sale, testing, and/or distribution of the patch into interstate commerce.

32.

At all times herein mentioned, Defendants, and each of them, knew, or in the exercise of reasonable care, should have known, that the dural patch was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and/or provided with proper warnings, it was likely to injure Plaintiffs and other users. Despite the fact that Defendants, and each of them, knew, or should have known that the dural patch could cause infection, they continued to market, distribute, and sell the dural patch to the public without proper warnings and with improper preparation and care.

33.

The Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over promoted and supplied the dural patch, that it was dangerous and unsafe for its use and intended purpose in Plaintiff WILLIAM ESTHEIMER.

34.

Defendants knew Plaintiff WILLIAM ESTHEIMER or others similarly situated would foreseeably suffer such injuries and/or risk of death as a result of Defendants' failure to exercise ordinary care by not disclosing the known risks of the patch. Defendants' breach of duty to disclose this information caused Plaintiff WILLIAM

ESTHEIMER to suffer the hereindescribed injuries and damages.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### [Fraud by Concealment]

35.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-34, inclusive, of this Complaint.

36.

At all times mentioned herein Defendants, and each of them, had the duty and obligation to disclose to Plaintiff WILLIAM ESTHEIMER and to his physicians the true facts concerning the dural patch; that is, that the dural patch was known to cause a significant and serious risk of infection and/or that it was contaminated.

37.

At all times herein mentioned, Defendants, and each of them, intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff WILLIAM ESTHEIMER and his physicians, with the intent to defraud Plaintiff.

38.

At all times herein mentioned, neither Plaintiff WILLIAM ESTHEIMER nor his physicians were aware of the facts set forth above, and had they been aware of said facts they would not have acted as they did, that is, Plaintiff WILLIAM ESTHEIMER would not have had the dural patch implanted.

39.

As a result of the concealment or suppression of the facts set forth above, Plaintiffs have sustained damage as hereinafter set forth.

40.

In doing the action herein alleged, Defendants, and each of them, acted with

oppression, fraud and malice and Plaintiffs are entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages and to Defendant's wealth, sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF KRISTEN ESTHEIMER

### [Loss of Consortium]

41.

Plaintiff KRISTEN ESTHEIMER hereby incorporates, as if fully set forth herein, each and every allegation contained in Paragraphs 1-40, inclusive, of this Complaint.

42.

At all times herein mentioned Plaintiff WILLIAM ESTHEIMER and KRISTEN ESTHEIMER were husband and wife.

43.

As a direct result of Defendants' aforesaid conduct, Plaintiff KRISTEN ESTHEIMER lost the care, comfort, society, affection and marital consortium of her husband, WILLIAM ESTHEIMER, and suffered a loss of love, affection, solace, moral support and physical assistance in the operation and maintenance of the home, all to her general damage in an amount within the jurisdiction of this Court.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

PRAYER FOR RELIEF

Plaintiffs pray for damages as follows:

1. For general damages in a sum within the jurisdiction of this Court;

2. For medical, hospital, and incidental expenses, according to proof;

- 10 -
COMPLAINT AND DEMAND FOR JURY TRIAL

3. For loss of earnings and for loss of earning capacity, according to proof;

4. As to Plaintiff KRISTEN ESTHEIMER, for loss of care, comfort, society, affection and marital consortium;

5. For punitive or exemplary damages;

6. For such other relief as the Court deems just and proper.

DATED: July 1, 2008.

HERSH & HERSH
A Professional Corporation

By_____
NANCY HERSH
Attorneys for Plaintiffs

- 11 -
COMPLAINT AND DEMAND FOR JURY TRIAL